IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 06-cv-01426-RPM

MARTIN T. DESCHNER,

              Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.

_____

ORDER OF REVERSAL AND FOR REMAND
_____

On November 10, 1998, Martin T. Deschner filed an application for Supplemental Security Insurance ("SSI") benefits alleging that he became disabled on January 1, 1996. Following a hearing an Administrative Law Judge ("ALJ") denied the application in a decision on January 24, 2001, and the Appeals Council denied Deschner's request for review. The ALJ had concluded that Deschner "has severe diabetes mellitus and bipolar disorder" but was not disabled within the meaning of the Act. Record, p. 16. After filing for judicial review in this court, the claimant filed an unopposed motion to remand which was granted on December 3, 2001.

Following a hearing held on June 26, 2002, at which a vocational expert ("VE") testified, a different ALJ denied the application by a decision dated January 15, 2003, having concluded at Step 5 of the required sequential process that Deschner was not disabled. The ALJ determined that Deschner could perform work as an industrial cleaner, kitchen helper, frame trimmer II, and newspaper carrier. The Appeals Council

denied a request for review and the claimant again came to this court. By order of September 9, 2004, the denial decision was reversed and the claim was again remanded for further consideration. This Court found that the ALJ failed to comply with the mandate given to him to obtain the opinion of a vocational expert because the ALJ "obstructed good faith efforts by counsel to add limitations that had support in the evidentiary record." This Court wrote:

> The Commissioner has the burden of proof at Step 5 of the evaluation process. Accordingly, the ALJ was required to explore the vocational capabilities of the claimant with the VE in a fair manner and this was not done. The most glaring omission from the hypothetical is the fact that this 52 year old man had no work experience. The evidence is clear that he has been dependent upon his aged parents and that he has lived in a sheltered environment. His hospitalization resulted from bizarre behavior and there is nothing in the record to support a view that he has the capacity to function in a work environment with other workers excepting the conclusions of consultative examiners. The ALJ assumed that this claimant's mental disorder was well controlled by medication but failed to consider the effects of the disorder on Mr. Deschner's ability to comply with instructions concerning those medications and the record shows that there was no compliance at times. It should not be assumed that such periods of non-compliance were the result of voluntary or willful actions.

Record, p. 392.

After remand, the same ALJ conducted another hearing on November 2, 2005, receiving further testimony from the claimant and an opinion from a different VE, who did not attend the hearing and whose opinion was given by telephone in response to the ALJ's single hypothetical question. The ALJ relied on that opinion to find that Deschner could perform the jobs of industrial cleaner and "agricultural workers, such as harvest worker fruit and weed thinner. Additional examples of such jobs include maid, parking lot signaler, and sandwich board carrier." Record, p. 386.

2

The ALJ found that the claimant had the residual functional capacity to perform medium work and included that in his hypothetical question. He also included the assumptions that Deschner has the ability to remember and carry out detailed instructions; maintain regular attendance, be punctual, sustain an ordinary routine without special supervision and make workplace decisions consistent with his education. The claimant's attorney asked the VE to consider that her client is diabetic with neuropathy who can stand 15 minutes at a time without having increased pain in his feet. The VE responded that the claimant could not then do medium jobs or the light jobs of maid, parking lot signaler and sandwich board carrier.

The ALJ rejected the standing limitations, finding that Deschner's testimony concerning the effects of his diabetic neuropathy was not credible.

Deschner testified at the third hearing and at the two prior hearings that due to his diabetic neuropathy he could not stand for more than 10 to 15 minutes at a time or walk more than 4 to 5 blocks. Record, pp. 455, 473-474.

The ALJ wrote: "The medical record shows that the claimant has ingrown toenails and calluses of both feet, but these conditions are treated with periodic debridement and should not cause significant of ongoing difficulties standing or walking." Further, "The medical record shows no objective evidence of peripheral neuropathy, and the claimant's treating physicians have not documented positive sensory findings in the claimant's feet upon physical examination." Record, p. 380. To the contrary, the medical records document symptoms consistent with pain and diabetic neuropathy. Deschner was treated by Dale L. Carnegie, DPM - Orthopaedic Podiatry,

3

at Denver Health Medical Center, beginning on November 11, 2000. Dr. Carnegie noted upon initial examination that the chief complaint was "Insulin-dependent diabetic with plantar ulcers hallux bilaterally," and wrote under the "PHYSICAL EXAMINATION" section of the report: "Peripheral neuropathy forefoot both feet. Diabetic ulcers both great toes." Under the "IMPRESSION" section of the report, Dr. Carnegie noted "Plantar ulcers due to poorly fitting shoes and diabetic neuropathy." Record, p. 335. The ulcers did respond well to treatment, as noted by the physician, but the follow up reports evidence the potential for chronic problems and reiterate the finding of diabetic neuropathy. Record, pp. 331, 310. Hence, Deschner's complaints about pain and the resulting limitations are supported by record medical evidence which the ALJ failed to mention.

The ALJ noted that Deschner's "diabetes is less than optimally controlled," and then wrote "Despite his suboptimal blood sugar control, the claimant has not had significant complaints of ongoing diabetes related symptoms." Record, p. 373. That statement is contradicted by the medical record. As the record and the opinion of the ALJ reflect, Deschner sought treatment for cataracts beginning in January, 2005, and subsequently had surgery. "Fundus photography showed evidence of moderate diabetic retinopathy" on July 13, 2005. Record, p. 373. The ALJ determined that "The claimant's lack of glycemic control is due primarily to noncompliance with his diabetic diet." Record, p. 374. The apparent suggestion that the claimant is at fault for his problems repeats the failure noted in this Court's previous decision that claimant's mental disorder may account for periods of noncompliance with medical directives.

4

Aside from the lack of support in the record for the ALJ's findings regarding Deschner's diabetes and the limitations caused by diabetic neuropathy there are two main problems with the ALJ's findings and conclusions regarding Deschner's mental illness. First, is how Deschner's mental illness manifests from a common sense perspective. Second, the ALJ applies the wrong legal standards in weighing the medical evidence of mental illness.

The ALJ found that Deschner's bipolar disorder is controlled with medication. *See, e.g.,* Record, p. 372. All the evidence of Deschner's lifestyle suggest that he functions at a marginal level, at best. Medical records show that Deschner was hospitalized in 1999 after being placed on a mental health hold following some kind of bus accident after which he exhibited bizarre behavior. Deschner is an insulin-dependent diabetic with poor control over his blood sugar and is unable to follow a proper diet or take medication as instructed.

In the prior decision, this Court found that the ALJ's hypothetical question to the first VE failed to include the salient facts that Deschner was a 52 year old man with no work experience who lived in a sheltered environment and was heavily dependent upon his aged parents. In the decision now under review, the ALJ went to some length to disagree with that observation, finding that

> ,,,the claimant's activities demonstrate that he is psychologically stable and capable of being around people and interacting with people without difficulty. The claimant's statements indicate that he does not live in a sheltered environment. The claimant has lived on his own at all times since his alleged disability onset date. He does not live in a sheltered housing situation; rather, he rents an apartment. Although his parents and family paid his rent and gave him spending money, the claimant did not require assistance with any other responsibilities. The claimant

5

> indicated that he is capable of performing his own household chores, self-care activities, grocery shopping, laundry, food preparation, and getting around with public transportation without assistance. The claimant has never required assistance in obtaining routine medical treatment. He does not require supervision to take his medications or check his blood sugar. Furthermore, the claimant did not testify to significant bipolar symptoms, such as episodes of mania or significant depression, which would affect his ability to work. The claimant did not identify any difficulty performing activities of daily living due to bipolar symptoms. For the reasons set forth above, the Administrative Law Judge concludes that the claimant's allegations of disability are not credible.

Record, p. 382.

Deschner's parents died before the third hearing. He testified that his living circumstances changed as a result. He no longer can go to their house for meals, he has felt a great loss and has been unable to seek therapy for it because the program that supported it is no longer funded. The ALJ never mentioned the parents' death in his decision.

The daily activities described by the claimant are not those of a person who can function as described by the ALJ in his hypothetical question relied on by the VE. Deschner eats fish sticks or canned tuna daily as his only meal. He sometimes supplements that diet with food from his public housing unit and snack food at a grocery store. His sister comes to clean his apartment biweekly. He visits with his brother, a bus driver, by riding on the bus several times a week. He goes to his brother's house on Saturday for dinner. He is unable to obtain a driver's license, replying entirely on bus transportation.

The ALJ's quoted conclusions are not only contradicted by the facts of Deschner's daily living habits, they are contradicted by the medical records. The

6

discharge records from the 1999 hospitalization identify as principal diagnoses, among others "Social isolation" and "Chronic unemployment." Record, p. 106. They further provide that Deschner had "approximately 15 years of decreased function and social isolation." Record, p. 107.

The ALJ commits legal error in weighing the medical evidence, and repeatedly concluding that the bipolar disorder is well controlled with medication. First, as noted above, Deschner's lifestyle belies that assertion. Second, even the consulting psychiatrist concluded that the disability from the disorder would be minimal "assuming" it remains controlled. Record, pp.181-86, Report of Dr. Luparello, recorded July 8, 1999. Citing Dr. Luparello's report and "the evidence as a whole," the ALJ concluded that any disability Deschner has from the bipolar disorder would be considered minimal. Record, p. 377. Following the examination by Dr. Luparello, medical records show that Deschner visited the emergency room in November of 2000 for manic-like behavior and was found to have subtherapeutic levels of lithium. Record, pp. 333, 336. Rather than weighing or considering this evidence the ALJ concludes: "The medical record contains no treatment notes from MHCD after September, 2000. However, outpatient clinic notes through the present document no reports of psychiatric symptoms and no observations of clinical signs of psychiatric disorder. At the time of the hearing, the claimant's attorney asserted that the medical record was complete." Record, p. 376.

Deschner testified that he wanted to continue with therapy, but that Denver Health experienced funding cuts. Record, p. 469. The medical information Deschner

submitted before his third hearing shows that he continues to take lithium, Record, p. 418, and he testified to that fact as well. Record, pp. 464-65.

The ALJ rejected a letter from an intern, Darin Smith, at the Denver Health Medical Center, that Deschner cannot be gainfully employed because "he lacks the coping skills necessary to deal with the stresses that would be placed upon him in a working environment." Record, p. 350. The ALJ is critical of the letter as both speaking to the ultimate issue of disability and as not being from an acceptable medical source. Record, p. 377. Smith was actually involved in Deschner's care. Deschner testified that he was seen by Smith. Record, p. 255.

There are medical records from Deschner's treating psychiatrist, Dr. Stout, that post-date Dr. Luparello's report. About the weight accorded to the opinions reflected in the records, the ALJ concluded "Dr. Stout's acknowledgment that other members of the claimant's treatment team felt that the claimant was unable to function is entitled to no weight as a treating source statement, because it is not based on Dr. Stout's personal observations of the claimant." Record, p. 378.

While Dr. Stout did report that he could not comment on specific abilities because he did not perform a functional work evaluation, he did note that he consulted with other members of Deschner's treatment team. Also Dr. Stout concluded upon examination that Deschner "continues to have cognitive deficits which have not responded to treatment" and that "cognitive disorganization may limit function on a more persistent basis." Record, pp. 191-94.

The ALJ concluded that "the medical evidence is contrary to Dr. Stout's

8

assessment that claimant has cognitive disorganization" because "claimant denied difficulty with cognitive abilities." Record, p. 378. The ALJ placed primary reliance on an opinion of a psychiatrist whose consultative evaluation report was over five years old. In support of his ruling, the ALJ also considered the report of Dr. Glasco, an expert opinion of a non-examining medical source, who concluded that Deschner could perform semi-skilled work and maintain substantial gainful employment. There is no indication that this DDS consultant had the information concerning the claimant's life history and daily activities.

In sum, the evidence does not support the ALJ's decision. Given the protracted history of this case, it is tempting to end it by requiring an award of benefits, but this Court cannot make a determination as to the date of onset of disability.

Upon the foregoing, it is

ORDERED, that the decision is reversed and this matter is again remanded for further consideration. Given the defensive tone of the ALJ's decision, it is suggested that the claim be assigned to a different ALJ if an assignment is necessary.

DATED: February 15th, 2008

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior Judge